No. 00-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 174

STATE OF MONTANA,

Plaintiff and Respondent,

v.

SCOTT WAYNE LOISELLE,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gerry Fagan, Moulton, Bellingham, Longo & Mather, P.C., Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Fred Van Valkenburg, Missoula County Attorney,

Scott Stearns, Deputy County Attorney, Missoula, Montana

Submitted on Briefs: March 1, 2001

Decided: August 23, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Scott Wayne Loiselle appeals from the denial of his motion to suppress issued by the Fourth Judicial District, Missoula County. Loiselle presents the following issue on appeal: Did the District Court err in concluding that a particularized suspicion existed to justify an investigative stop of Loiselle's vehicle?

¶2 We affirm.

## BACKGROUND

¶3 Shortly after midnight on June 26, 1999, Deputy Steve Nelson of the Missoula County Sheriff's Department made an investigative stop of Loiselle's vehicle on Brooks Street in Missoula, Montana. Brooks Street is an active multi-lane thoroughfare. Prior to the stop, Deputy Nelson was traveling south on Brooks Street behind Loiselle. Nelson observed Loiselle's vehicle drifting across the right hand lane and across the white fog line. Loiselle then turned into the Bitterroot Motors (a local car dealership) parking lot without signaling. Deputy Nelson turned his cruiser around in a nearby parking lot and observed Loiselle pull out of Bitterroot Motors and proceed to travel north on Brooks Street. Deputy Nelson observed Loiselle change lanes without signaling, and then drift and cross the fog line. Loiselle was driving with one wheel crossing the fog line and on the shoulder of the road for approximately three seconds. During this time, his car was weaving slightly back and forth. Deputy Nelson performed an investigative stop. A video camera in his vehicle recorded Loiselle's driving patterns and the subsequent stop.

¶4 After further investigation, Loiselle was arrested and subsequently charged with DUI and failure to have proof of insurance. Loiselle appeared in the Justice Court of Missoula County and filed a motion to suppress evidence obtained from the investigative stop which was denied by the Justice Court. Loiselle then pled guilty, reserving his right to appeal the

denial of his motion to suppress evidence.

¶5 Loiselle subsequently appealed the denial of his motion to suppress to the Fourth Judicial District Court, Missoula County. Concurrent with the criminal prosecution, Loiselle, a resident of Cascade County, petitioned the Eighth Judicial District, Cascade County, for judicial review of his driver's license suspension pursuant to § 61-8-403, MCA. An evidentiary hearing was conducted in the Eighth Judicial District Court. Loiselle requested that the Fourth Judicial District Court render a decision based on the parties' briefs and the certified transcript of the hearing in the Eighth Judicial District. The Fourth Judicial District denied Loiselle's motion to suppress. Loiselle appeals.

## STANDARD OF REVIEW

¶6 We review a district court's denial of a motion to suppress evidence to determine whether the district court's finding that the officer had particularized suspicion to justify the investigatory stop is clearly erroneous and whether its conclusions of law are correct. *See State v. Farabee*, 2000 MT 265, ¶ 11, 302 Mont. 29, ¶ 11, 22 P.3d 175, ¶ 11.

## DISCUSSION

¶7 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons against unreasonable searches and seizures, including brief investigatory stops of vehicles. *Farabee*, ¶ 14 (citations omitted.) To make an investigatory stop, an officer must have a particularized and objective basis for suspecting the particular person of criminal activity. *Farabee*, ¶ 14. In *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293, we held that in order for the State to prove the existence of a particularized suspicion, the State must show: (1) objective data from which an experienced police officer can make certain inferences; and (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. *Gopher*, 193 Mont. at 194, 631 P.2d at 296. Montana has codified the need for particularized suspicion in § 46-5-401, MCA. Whether particularized suspicion to perform an investigatory stop exists at the time of a stop is a question of fact which is determined by considering the totality of the circumstances. *State v. Lafferty*, 1998 MT 247, ¶ 10, 291 Mont. 157, ¶ 10, 967 P.2d 363, ¶ 10.

¶8 As a threshold matter we must address Loiselle's contention that his failure to use his turn signal during the observed driving should not have been considered by either the

arresting officer or the District Court. Loiselle argues that he did not violate the turn signal statute when turning into Bitterroot Motors and when changing lanes because there was no traffic to be "affected by such movement." ection 61-8-336(1), MCA. The State disagrees and argues that Loiselle's failure to utilize his turn signal when observed by the arresting officer was conduct the officer could consider as part of the totality of the circumstances. The State contends that drivers must operate their turn signals in any maneuver that may potentially affect other traffic.

¶9 Under the facts presented we need not resolve whether the State or Loiselle is

correctly interpreting § 61-8-336(1), MCA. Loiselle was not ultimately charged with a violation of the turn signal statute, and thus the fact is not critical to our analysis. As discussed below, irrespective of Loiselle's failure to utilize a turn signal, there was sufficient other indicators to raise a particularized suspicion in the experienced judgment of Deputy Nelson to make an investigative stop.

¶10 Deputy Nelson testified that he noticed Loiselle because Loiselle was "drifting" and turned without signaling into a business that was closed. He also testified that in his experience, when drivers notice officers behind them and turn off the road, it is for suspicious reasons. After Deputy Nelson passed Loiselle, Loiselle pulled back out onto Brooks and drove in the other direction. Deputy Nelson then continued to follow Loiselle and, while following him, saw him move from the center lane to the right-hand lane and then across the fog line. With his car visibly weaving, Loiselle drove over the fog line for approximately three seconds. The videotape of Loiselle's driving confirms the testimony of Deputy Nelson.

¶11 Citing *Hulse v. State*, 1998 MT 108, 298 Mont. 1, 961 P.2d 75, Loiselle argues that his driving was not sufficiently erratic to constitute a particularized suspicion for an investigatory stop. Loiselle also argues that, pursuant to our holding in *Lafferty*, a mere touching of the fog line or crossing of the fog line is not, in and of itself, a traffic infraction and cannot be sufficient to create a particularized suspicion.

¶12 The District Court was correct in determining that the totality of the circumstances justified this stop. Loiselle did not merely touch the fog line, but actually drove over it and proceeded on the shoulder of the road for at least three seconds. This behavior was preceded by erratic driving which caught the officer's attention. The exhibited driving behavior was late at night and in the proximity of several nearby bars. *See Matter of*

*Suspension of Driver's License of Blake* (1986), 220 Mont. 27, 31, 712 P.2d 1338, 1341 (holding that time of day and location are relevant factors in the totality test), *overruled on other grounds by Bush v. Montana DOJ, Motor Vehicle Division*, 1998 MT 270, ¶ 11, 291 Mont. 359, ¶ 11, 968 P.2d 716, ¶ 11. *See also Lafferty*, ¶ 17. The totality of the circumstances, as presented to Deputy Nelson, a five year veteran of the Missoula County Sheriff's Office, was sufficient to provide objective data from which Deputy Nelson could suspect that the occupant of the vehicle had been engaged in wrongdoing and commence an investigative stop.

¶13 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER